# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 87 C 7295 | **DATE** | 1/12/2001 |
| **CASE TITLE** | CHICAGO FIRE FIGHTERS UNION LOCAL 2 et al vs. CITY OF CHICAGO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant City of Chicago's bill of costs is reduced by $9,138.28. Costs are taxed in favor of defendant City of Chicago in the amount of $37,773.48.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JAN date docketed | |
| | Docketing to mail notices. | | 776 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/12/2001 date mailed notice | |
| JS | courtroom deputy's initials | 01 JAN 16 AM 7:44 | JS mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO FIRE FIGHTERS UNION LOCAL NO. 2, *et al.*, </br> Plaintiffs, </br> v. </br> CITY OF CHICAGO, </br> Defendant. | ) ) ) ) ) ) ) ) ) | No. 87 C 7295 |
| CHICAGO FIRE FIGHTERS UNION LOCAL NO. 2, *et al.*, </br> Plaintiffs, </br> v. </br> CITY OF CHICAGO, </br> Defendant. | ) ) ) ) ) ) ) ) ) | No. 89 C 7984 |
| MARTIN O. HOLLAND, *et al.*, </br> Plaintiffs, </br> v. </br> CITY OF CHICAGO, </br> Defendant. | ) ) ) ) ) ) ) ) | No. 93 C 5438 |
| BRIAN T. McMAHON, *et al.*, </br> Plaintiffs, </br> v. </br> CITY OF CHICAGO, </br> Defendant. | ) ) ) ) ) ) ) ) | No. 93 C 6175 |
| ROBERT MOLINARI, *et al.* </br> Plaintiffs, </br> v. </br> CITY OF CHICAGO, </br> Defendant. | ) ) ) ) ) ) ) ) ) | No. 96 C 808 |

DOCKETED
JAN 1 6 2001

## MEMORANDUM OPINION AND ORDER

Following a lengthy bench trial, this court entered judgment in favor of defendant City of Chicago ("the City") on all claims raised in five consolidated cases brought by plaintiffs Chicago Fire Fighters Union Local No. 2 et. al. on December 30, 1999. In that opinion, this court found the City was justified in intentionally discriminating against white firefighters in promotion as a remedy for intentional discrimination against African-American and Hispanic firefighters in the past. The City has filed a bill of costs totaling $46,911.76. Plaintiffs object to the imposition of any costs against them, arguing that the City is an admitted "wrongdoer" and therefore not entitled to recover any costs. In the alternative, plaintiffs argue that the bill of costs should be significantly reduced because it contains unnecessary and excessive charges for deposition expenses and transcripts, witness and subpoena fees, expert witness fees, printing fees, and exemplification fees. For the following reasons, this court awards costs to the City, but reduces its requested costs of $46,911.76 by $9,138.28. Defendants are therefore awarded costs in the amount of $37,773.48.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 54(d)(1), "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." The costs taxable under FRCP 54(d)(1) are set out in 28 U.S.C. § 1920:

- (1) Fees of the clerk and marshal;
- (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
- (3) Fees and disbursements for printing and witnesses;
- (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
- (5) Docket fees under section 1923 of this title;
- (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

2

A district court has broad discretion in determining whether costs should be awarded, but the presumption established by Rule 54 is that the prevailing party will recover its costs. Weeks v. Samsung Heavy Indus. Co. Ltd., 126 F.3d 926, 945 (7th Cir. 1997). The losing party has the burden to affirmatively show that the prevailing party is not entitled to costs. Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co., 854 F.2d 219, 222 (7th Cir. 1988). In general, the Seventh Circuit has recognized only two exceptional circumstances to overcome the presumption that a prevailing party should get costs: (1) when he or she has engaged in some misconduct or other action worthy of penalty, or (2) when the losing party is indigent. See id.

I.  Whether Costs Should be Assessed Against Plaintiffs

Plaintiffs argue that the City should not be awarded costs because it has admitted "wrongdoing" in the form of intentional discrimination against non-minority firefighters. In so arguing, plaintiffs equate the City's admitted "intentional discrimination" with "wrongdoing." While intentional discrimination is often "wrongdoing," the law has sanctioned certain, limited forms of intentional discrimination. Such was the case here. The City argued, and this court found, that the City's admitted discrimination in the promotion of minority firefighters was justified because vestiges of past intentional discrimination against African-American and Hispanic firefighters remained at the Fire Department. As such, while this court did find that the City had intentionally discriminated both against non-minority and minority firefighters, it did not find that the City committed a "wrong" against these plaintiffs.

This case is thus unlike DiGiore v. Ryan, 172 F.3d 454 (7th Cir. 1999), cited by plaintiffs, in which the Seventh Circuit held that a plaintiff should not be held responsible for costs even

3

though his claim was dismissed as moot because the defendants had agreed that the plaintiff should be paid for past overtime and for future hours of overtime work. In that case, the plaintiff was <u>de facto</u> the prevailing party -- the plaintiff filed suit, and then got what he was seeking. The <u>DiGiore</u> defendants had "addmitt[ed] their wrongdoing" as to that plaintiff on the issue in dispute in the litigation. See <u>id.</u> at 467. Here, by contrast, all "wrongdoing" admitted to by the City concerns discrimination against minorities, not against plaintiffs. The admitted intentional discrimination against non-minorities was not "wrongdoing" under the law. To the contrary, if this court had found the discrimination to be "wrongful," this court would have found in plaintiffs' favor on their claims. Unlike <u>DiGiore</u>, there is no way in which it can be said that plaintiffs were <u>de facto</u> prevailing parties.

## II. <u>Reduction of the City's Costs</u>

Having found that the City is entitled to recover its costs in this litigation, this court must address plaintiffs' objections to certain costs and consider which of the requested costs should be taxed. This court addresses each of plaintiffs' objections in the order they were raised.

### A. <u>Deposition Expenses</u>

The City seeks recovery for court reporter fees and transcript costs for approximately 70 depositions, including the depositions of 54 plaintiffs, non-plaintiffs Richard Cloud and Mike Cahill, and plaintiffs' expert Dr. Sandy Zabell. The City also seeks to recover the expense of deposition transcripts of three deponents whose depositions were taken by plaintiffs' attorneys. Plaintiffs argue that costs incurred in taking the depositions of all plaintiffs and non-parties Richard Cloud and Mike Cahill should be denied, object to the amount of the deposition transcript costs for three of plaintiffs' deponents, and object to the expenses incurred in deposing plaintiffs' expert, Dr. Sandy Zabell.

4

Under 28 U.S.C. § 1920, "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case" are taxable as costs. To be considered "necessarily obtained for use in the case," the deposition must have been "reasonably necessary" to the case at the time it was taken. Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 455 (7th Cir.1998). The introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition. Id.

1. Plaintiffs' Depositions

Plaintiffs argue that the City should not be awarded costs incurred in taking the deposition of the 54 plaintiffs because the City conceded that the plaintiffs had established a prima facie case of discrimination and the only issue was whether the intentional discrimination was justified. Because they had no pertinent information regarding whether the discrimination was justified, plaintiffs argue, their depositions were not reasonably necessary in this litigation. This court disagrees. The City had to depose plaintiffs in order to determine what their claims were and whether they had standing to assert those claims. Moreover, the plaintiffs did, or could have had, information that was relevant to whether the City had an adequate justification for passing over non-minority firefighters in favor of minorities. While this court ultimately found that the intentional discrimination was justified because of the purposeful discrimination against minorities by the City's Fire Commissioner during the years 1957 to 1977, that does not render the events of the years before 1957 and after 1977 irrelevant. Plaintiffs who could testify to the treatment of minorities at any time had pertinent information. Moreover, at the start of this litigation over twelve years ago, there was no way for the City to have known exactly what years the Fire Department engaged in intentional discrimination against African-Americans and Hispanics. As such, the depositions of all the

5

plaintiffs were reasonably necessary at the time they were deposed.

Plaintiffs also argue that the City should not be able to recover costs for the transcript of the plaintiffs' depositions because those transcripts have never been used. Again, this court believes that the deposition transcripts of parties in this case were "reasonably necessary" to the case at the time they were ordered. This court has found that taking the deposition of the plaintiffs was reasonably necessary, viewing the case from the time the depositions were taken. Furthermore, six of the plaintiffs actually testified at trial. At the time the City ordered the transcripts, it could not have been clear which plaintiffs would be called at trial. Having a copy of a potential trial witness's prior deposition testimony is certainly "reasonably necessary." Again, actual use of a deposition transcript is not a prerequisite to recover for its cost. Finchum, 57 F.3d at 534. Accordingly, this court finds that the costs relating to the taking of the 54 plaintiffs' depositions and obtaining the transcripts of those depositions, totaling $15,033.45, are proper and should be allowed.

2. Depositions of Non-Parties Richard Cloud and Mike Cahill

Plaintiffs object to the depositions of non-plaintiffs Richard Cloud and Mike Cahill, stating "the City has not demonstrated the necessity of their depositions." However, plaintiffs have not stated what the nature of these witnesses' deposition testimony was, nor why they were not necessary for this litigation. Plaintiffs, not the City, bear the burden of demonstrating that costs should not be allowed. Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co., 854 F.2d 219, 222 (7th Cir. 1988). Accordingly, this court refuses plaintiffs' request to reduce the City's costs by $441.85, the deposition costs of Richard Cloud and Mike Cahill.

3. Cost of Deposition Transcripts

Plaintiffs object to the amount charged for copies of the deposition transcripts of three

witnesses deposed by plaintiffs, Cheryl Thomas, Glenn Carr, and Murray Weaver. The copies of the thee deposition transcripts together totaled 596 pages, and the City claims $1,041.55 in costs for them, reflecting a rate of approximately $1.75 per page. Under Local Rule 54.1(b), "the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." The rate established by the Judicial Conference for a deposition copy is $.75, <u>Cengr v. Fusibond Piping Sys., Inc.</u>, 135 F.3d 445, 455 (7th Cir. 1998), and the parties did not agree to any other rate. As such, the maximum amount recoverable for these three depositions is $447 (596 pages at $.75 per page). The City's deposition costs are therefore <u>reduced by $594.55</u>, the difference between the amount sought for these three depositions ($1,041.55) and the amount allowed at a $.75 per page rate ($447).

4. <u>Deposition and Transcript for Plaintiffs' Expert Witness Dr. Zabell</u>

Plaintiffs object to the $3,870.35 in costs claimed by the City for the 24 hours taken in deposing plaintiffs' expert witness, Dr. Zabell, and for the original transcript of that deposition. Plaintiffs argue that the deposition was excessively long and should therefore be reduced by $967.58, a 25% reduction. However, plaintiffs offer this court no reason to explain how or why the length of the deposition was excessive. While 24 hours is a long time, in light of the numerous and complex issues of this case, 24 hours may have been reasonable. In the absence of any reason to believe that the length of the deposition was unreasonable, this court declines plaintiffs' request to reduce the costs by 25%.

Plaintiffs also object to the per page cost of Dr. Zabell's deposition original transcript. There are 918 pages of Dr. Zabell's transcript for a total original transcript charge of $3,210.45, reflecting

7

a per page rate of approximately $3.50. The Judicial Conference rate for original copies of transcripts is $3.00 per page. Accordingly, the City may recover only $2,754 for Dr. Zabell's original transcript (918 pages at $3.00 per page), not the $3,210.45 reflected in their requested costs. Accordingly, the City's deposition costs are further reduced by $456.45, the amount by which the claimed cost ($3,210.45) exceeds the cost at the allowable rate ($2,754).

B.   Witness and Subpoena Fees

Plaintiffs object to the witness and subpoena fees of Messrs. Berry, Davis, Harris, Ross, Stover, Burns, Grand Pre, Robinson, Scott, Long, Meeks, Reddy, and Thompson. Section 1920(3) provides for witness fees, and the actual testimony of the witness is not necessary to recover subpoena fees under Fed. R. Civ. P. 54(d), as long as the witness is subpoenaed to appear in good faith. Independence Tube Corp. v. Copperweld Corp., 543 F. Supp. 706, 722 (N.D. Ill. 1982). Again, plaintiffs state that the City has not "made any effort to show" why the testimony of these witnesses was reasonably necessary. However, plaintiffs themselves have also made no effort to show how or why the testimony of these witnesses was not reasonably necessary at the time they were subpoenaed, and do not allege that the City subpoenaed them in bad faith. Absent any reason to believe otherwise, this court must believe that the City would not have subpoenaed witnesses whom they did not believe were reasonably necessary at the time. Accordingly, all of the City's lay witness fees, totaling $919.60, will be allowed.

C.   Expert Witness Expenses

The City claims $11,494.45 for travel and lodging expenses incurred by the City's four expert witnesses. Section 1920(3) allows for witness fees, which are specified in 28 U.S.C. § 1821(b). Section 1821(b) allows for "attendance fees[s] for the time necessarily occupied in going

8

to and returning from the place of attendance and the beginning and end of such attendance or at any time during such attendance." Section 1821(d)(1) allows for a subsistence allowance to be paid to a witness when an overnight stay is required at the place of attendance. Section 1821(d)(2) and (3) limits the maximum per diem allowance to that prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government. Plaintiffs object to the fees requested for the City's four experts on the ground that the requested fees exceed those allowed by § 1920 and § 1821.

    1.    <u>Dr. Barrett</u>

Plaintiffs object to the fees requested for Dr. Barrett on two bases: (1) that the travel and lodging fees requested for March 11-12, 1997 and January 26-27, 1998 were for his testimony in a different, related trial, not for his attendance at trial or deposition in this case, and (2) that the fee for his lodging and meals when he testified at trial in July 1997 is excessive. This court agrees on both counts. The City can only recover for fees and expenses incurred for trial appearances and depositions; those witness fees incurred in the <u>McNamera</u> case, totaling $1,260.42, are not taxable against these plaintiffs. Second, the lodging, meals, and incidental expenses exceed the costs allowed under § 1821(d). The City claims costs of $235.54 for one night's lodging at the Courtyard by Marriot, and an additional $72.71 for meals for Dr. Barrett's testimony at trial on July 25, 1997.[1] However, at the time of Dr. Barrett's testimony, the maximum GSA lodging charge for Cook County

---

[1]Plaintiffs, apparently in error, objected to the expenses incurred by Dr. Barrett at the Palmer House Hilton. However, the Palmer House bill was from March of 1997, and is excluded completely because Dr. Barrett was testifying in the <u>McNamara</u> trial at that time. As such, this court reduces Dr. Barrett's lodging and meal expenses for his actual lodging in July 1997 at the Courtyard by Marriot, though not in the amount requested by plaintiffs.

9

was $130, and the maximum for meals and incidental expenses was $46. Accordingly, Dr. Barrett's expenses are reduced by $132.25 ($105.54 for lodging and $26.71 for meals).[2]

In total, the costs claimed by the City for Dr. Barrett's expenses are <u>reduced by $1,392.67</u> ($1,260.42 for non-deposition and non-trial testimony related expenses, and $132.25 for excessive lodging and meal expenses for trial testimony on July 25, 1997).

2.  Dr. Cascio

The City seeks to recover for travel, lodging, and meal expenses incurred by Dr. Cascio for two separate trips to Chicago -- July 30 and 31, 1997, and August 3 through August 5, 1997. However, Dr. Cascio was only deposed on July 31, 1997. In August, Dr. Cascio apparently simply attended Dr. Schmidt's deposition. There is no statutory basis to recover the cost of an expert witnesses' attendance at another person's deposition. In the absence of explicit statutory authorization to tax costs, this court is bound by the limitations set out in 28 U.S.C. §§ 1920 and 1821. <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987). Accordingly, the City cannot recover any of the $840.00 in expenses sought for Dr. Cascio's August 1997 trip to Chicago. In addition, Dr. Cascio's July 31, 1997 lodging expenses exceed those allowed by § 1821(d). The City seeks to recover for one night's stay at the Hyatt Regency Chicago totaling $205.67 (including the room tax). This charge exceeds the $130.00 GSA allowed rate by $75.67. Accordingly, the City's expenses for Dr. Cascio are <u>reduced by $915.67</u> ($840.00 for the non-deposition August trip and $75.67 for the excessive lodging charge).

---

[2]The remainder of the $1,424.00 in expenses submitted by the City for Dr. Barrett's expenses on July 24 and 25 are transportation costs to which plaintiffs do not object. Accordingly, those costs will be allowed.

10

3. Dr. Suchanek

The City seeks reimbursement for $5,864.05 in travel and lodging expenses for Dr. Suchanek. However, Dr. Suchanek only testified in October 1997 and January 1998, and the remainder of Dr. Suchanek's bills reflect that the trips were for the purpose of consulting with the City. Those costs for trips other than in October 1997 and January 1998, totaling $4,989.69, are not related to trial or deposition testimony, and are therefore not recoverable under § 1920. In addition, Dr. Suchanek's lodging expenses for his January 1998 trip exceed the GSA rate of $130 per night by $19.37 for each of his two nights at the Chicago O'Hare Hilton. Accordingly, Dr. Suchanek's lodging expenses for the January 1998 trip are reduced by $58.11.[3]

In total, the City's costs for Dr. Suchanek's lodging and meal expenses is <u>reduced by $5,047.80</u> ($4,989.69 for non-deposition or trial days, and $58.11 for excessive lodging charges).

4. Dr. Weaver

Plaintiffs object to Dr. Weaver's lodging costs, totaling $593.81 for two nights at the Palmer House, and to $76.80 for clothing. The claimed $593.81 in lodging expenses exceeds the GSA rate of $260 for two nights by $333.81. As such, Dr. Weaver's travel costs must be reduced by $333.81. There is no statutory basis upon which the City may recover the costs of clothes for Dr. Weaver to

---

[3]Plaintiffs objected to Dr. Suchanek's lodging costs for the October 1997 trip, arguing that $238 per night was excessive. However, a review of Dr. Suchanek's receipts indicates that he actually stayed in Chicago for two nights at $119 per night on his trip to Chicago. Though Dr. Suchanek only testified for one day, it was not unreasonable for him to spend two nights in Chicago. The $119 is less than the $130 GSA rate, and therefore the October 1997 lodging expenses were not excessive. Plaintiffs also objected to $318.11 of Dr. Suchanek's January 1998 lodging expenses, arguing that $448.11 exceeded the GSA rate by $318.11. Again, however, the $448.11 lodging bill was for three nights, not one. Each night was only $149.37, and thus exceeded the GSA rate by $19.37, not $318.11.

11

wear while testifying. Accordingly, Dr. Weaver's expenses are further reduced by $76.80.

In total, the expenses for Dr. Weaver <u>are reduced by $410.61</u> ($333.81 for excessive lodging costs and $76.80 for disallowed clothing costs).

D.     Printing Expenses

Plaintiffs object to $1,282.10 sought for the printing of discovery materials. The City did not provide a page count or per page fee for that printing. As such, the City has failed to show that all of the printing expenses were reasonably necessary for this litigation. Plaintiffs have requested a 25% reduction of the discovery materials' printing costs because of the City's failure to justify the expenses. This court believes a reduction of 25% is reasonable in light of the City's failure to provide a breakdown of the printing costs. Accordingly, the City's printing charges are reduced by $320.53 (25% of $1,282.10). This court finds that the remainder of the City's printing charges, including the color laser prints related to Dr. Suchanek's testimony in January 1998, are reasonable.

Accordingly, the City's printing charges are <u>reduced by $320.53</u>.

E.     Exemplification Fees

Plaintiffs object to $126.30 in copying fees sought by the City on the basis that the charges were incurred prior to May, 1990, when this court entered judgment in favor of the City, making the City the prevailing party and thus entitled to recover its costs. Plaintiffs argue that the City has waived the right to recover for those costs by not submitting a bill of costs at that time. This court disagrees. The City had no obligation to submit a bill of costs during the pendency of the earlier appeal, and has not waived its right to recover those costs. Because the City has not yet recouped those costs, and is now the prevailing party, it may now recover its costs.

12

## CONCLUSION

For the reasons stated, the City of Chicago's bill of costs is reduced by $9,138.28. The City is awarded costs taxable to plaintiffs in the amount of $37,773.48.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

DATE: January 12, 2001